**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| JOHN DOE, | Case No.: 1:24-cv-00380 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| RELIANTCY, INC.,<br>603 S. Public Rd.<br>Lafayette, CO 80026 | |
| SERVE: Lawrence Jay Mesmer<br>668 Rock Ridge Dr.<br>Lafayette, CO 80026 | |
| Defendant. | |

## COMPLAINT

Plaintiff John Doe ("Plaintiff") by and through his counsel brings the following Complaint against Reliantcy, Inc. ("Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check wherein Defendant published to Plaintiff's potential employer inaccurate, adverse and stigmatizing criminal record information that otherwise should have been excluded from the employment purposed consumer report.

## INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and

furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant improperly published adverse and inaccurate criminal record information that should have been excluded from the employment purposed consumer report.

4.     Specifically, Defendant reported (i) an expunged criminal record; (ii) nulled charges that antedated the report by more than seven years; (iii) inaccurate dispositions of several criminal records; and (iv) duplicative cases and charges.

5.     Plaintiff's prospective employer ordered an employment purposed consumer report about Plaintiff from Defendant.  Plaintiff's prospective employer denied Plaintiff's employment application after receiving Defendant's report wherein Defendant published the inaccurate criminal record information that otherwise should have been excluded.

6.     Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

7.     Specifically, Defendant does not employ reasonable procedures to exclude inaccurate and adverse criminal record information from consumer reports that were: (i) duplicative; (ii) expunged; (iii) nulled charges which antedate the report by more than seven years; and (iv) those that inaccurately reported the disposition of several criminal records.

8.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate and stigmatizing criminal record information.

9.     Defendant's inaccurate report nearly cost Plaintiff a good paying job and job security.

10.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment, wages, and benefits; loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA;  for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – the inaccurate dispositions of the criminal records and the expunged criminal records – was information that should have been corrected or completely excluded from the employment purposed consumer report and should have been deleted from the subject employment purposed consumer report, in violation of the FCRA, 15 U.S.C. § 1681i; and for reporting adverse information that should have been excluded from the employment purposed consumer report because the adverse information antedated the report by more than seven years in violation of the FCRA, 15 U.S.C. § 1681c(a).

## **PARTIES**

12.     John Doe ("Plaintiff") is a natural person residing in New Carrollton, Maryland, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13.     Defendant Reliantcy, Inc. ("Defendant") is a Colorado corporation doing business throughout the United States, including the State of Maryland and in this District, and has a principal place of business located at 603 S. Public Rd., Lafayette, CO 80026.

14.     Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote.  These reports are provided in connection with a business transaction initiated by the employer.

15.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

18.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

19.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

20.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

21.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

22.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

23.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

24.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

25.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

26.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27.     Under 15 U.S.C. § 1681i, consumer reporting agencies are required to conduct a reasonable reinvestigation to determine whether the disputed information is accurate and record the current status of the disputed information or delete the item from the file in accordance with

15 U.S.C.  § 1681i(a)(5) before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

28.     Under 15 U.S.C. § 1681c(a), consumer reporting agencies are required to exclude from consumer reports adverse information, other than records of convictions of crimes, which antedate the report by more than seven years.

29.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

30.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

31.     As summarized in a recent report by the Consumer Financial Protection Bureau,[1] a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

32.     The background check industry takes in revenues in excess of three billion dollars, annually.[2]

33.     Background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating background checks.

---

[1]     CFPB,  Market  Snapshot:  Background  Screening  Reports  (Oct.  2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2]     IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

34.     Background check companies, like Defendant, collect millions of criminal and civil records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35.     Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was inaccurately reporting (i) expunged criminal records; (ii) obsolete records of arrest that antedated the report by over seven years; (iii) inaccurate statuses of several criminal records, and (iv) duplicative criminal records.

40.     As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association

("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Sought New Employment To Spend More Time with his Children

41.     Plaintiff is a father to four children and is the sole income earner in his household.

42.     Plaintiff has been unemployed since around September or October of 2023 when he resigned from his position with Swift Transportation, as this position required Plaintiff to be on the road traveling to different states too often.

43.     Plaintiff made this decision to be able to be present for his children.

### Plaintiff's Job Application to Challenger Transportation ("Challenger")

44.     In an effort to provide for his family, Plaintiff applied for work with Challenger in or around December of 2023.

45.     Shortly after Christmas, Plaintiff was invited for an interview which he successfully underwent.

46.     After getting through the interview, Plaintiff received a job offer from Challenger.

47.     As part of the application process, Challenger required, and Plaintiff authorized, a background check.   The position with Challenger was conditioned on Plaintiff passing a background check ("employment report").

48.     The position with Challenger was full-time. During the training period, the position paid $16.75 per hour. Thereafter, the position paid $22.00 per hour.

49.     Plaintiff was given the prospective start date of January 16, 2024.

**Defendant Published an Inaccurate Background Check Report to Challenger**

50.     In accordance with its standard policies, on or about December 28, 2023, Challenger ordered a criminal background check on Plaintiff from Defendant.

51.     On December 29, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Challenger.

52.     Within that employment report, Defendant published stigmatizing criminal record information that otherwise should have been excluded from the employment purposed consumer report.

53.     Specifically, Defendant's employment report about Plaintiff included records related to several expunged criminal cases, including Case Nos. 13041C; 5D00380434; CR-03-CR-19-001220; and Case No. 2C00471529 (collectively, the "Expunged Cases").

| Offense: | |
|---|---|
| Case Number: | 134041C |
| Description: | WEAR, CARRY AND TRANSPORT HANDGUN UPON THEIR PERSON |
| Statute Number: | CR 4-203(a)(1)(i) |
| File Date: | 2018-07-02 |
| Offense County: | Montgomery |
| Case Type: | INFORMATION |
| Court Name: | Circuit |
| Notes: | District Court Case Number: 5D00380434 |
| Status: | OPEN |

Case No. 134041C: Expunged on 9/28/2023

**Offense:**

| | |
|---|---|
| Case Number: | C-03-CR-19-001220 |
| Description: | ASSAULT-SEC DEGREE |
| Statute Number: | CR.3.203 |
| Offense Date: | 2019-01-01 |
| File Date: | 2019-05-06 |
| Offense County: | Baltimore |
| Case Type: | Misdemeanor |
| Court Name: | Circuit |
| Notes: | Other Related Cases: 190010216 |
| Notes 2: | CJIS Code: 1-1415 |
| Status: | Open |

Case No. CR-03-19-001220: Expunged on 11/16/2022

**Offense:**

| | |
|---|---|
| Case Number: | C-03-CR-19-001220 |
| Description: | TRESPASS: PRIVATE PROPERTY |
| Statute Number: | CR.6.403 |
| Offense Date: | 2019-01-01 |
| File Date: | 2019-05-06 |
| Offense County: | Baltimore |
| Case Type: | Misdemeanor |
| Court Name: | Circuit |
| Notes: | Other Related Cases: 190010216 |
| Notes 2: | CJIS Code: 2-2220 |
| Status: | Open |

Case No. C-03-CR-19-001220: Expunged on 11/16/2022

**Offense:**

| | |
|---|---|
| Case Number: | 2C00471529 |
| Description: | TRESPASS: PRIVATE PROPERTY |
| Statute Number: | CR.6.403 |
| Offense Date: | 2019-01-01 |
| File Date: | 2019-01-01 |
| Offense County: | BALTIMORE |
| Case Type: | CRIMINAL |
| Court Name: | DISTRICT |
| Notes 2: | CJIS CODE: 2 2220 |
| Status: | ACTIVE |

Case No. 2C00471529: Expunged on 11/16/2022

54.     Additionally, Defendant reported Case No. 1D00334636, which included a record of arrest that antedated the report by more than seven years and did not result in a conviction (the "Obsolete Case").

| Offense: | |
|---|---|
| Case Number: | 1D00334636 |
| Description: | RESIST/INTERFERE WITH ARREST |
| Disposition: | NOLLE PROSEQUI |
| Statute Number: | CR.9.408.(B) |
| Offense Date: | 2015-04-05 |
| Disposition Date: | 2015-05-21 |
| File Date: | 2015-04-05 |
| Offense County: | MONTGOMERY |
| Case Type: | CRIMINAL |
| Court Name: | DISTRICT |
| Notes 2: | CJIS CODE: 1 0600; CRIMINAL INJURIES COMPENSATION FUND: $0.00 |
| Status: | CLOSED |

Case No. 1D00334636:  Record of non-conviction antedating report by more than seven years

55.     Neither the Obsolete Case nor the Expunged Cases should have appeared in Plaintiff's employment purposed consumer report.

56.     Within that employment report, Defendant also published grossly inaccurate and stigmatizing criminal record information.

57.     Specifically, Defendant reported nine closed and disposed criminal cases with a "status" of "OPEN" or "ACTIVE CASE", making it appear as though Plaintiff was the defendant in nine different pending criminal actions.

58.     Defendant inaccurately reported Case Nos. 13041C; CR-03-CR-19-001220; 00000000GZ0KY1; 00000000H00KY1; 00000000H10KY; 00000000SR0QPN;2C00471529; 3D00406703; and 5D00380434 ("Closed Cases") with statuses of "OPEN" or "ACTIVE CASE," as shown below:

.

**Offense:**

| | |
|---|---|
| Case Number: | 134041C |
| Description: | WEAR, CARRY AND TRANSPORT HANDGUN UPON THEIR PERSON |
| Statute Number: | CR 4-203(a)(1)(i) |
| File Date: | 2018-07-02 |
| Offense County: | Montgomery |
| Case Type: | INFORMATION |
| Court Name: | Circuit |
| Notes: | District Court Case Number: 5D00380434 |
| Status: | OPEN |

Case No. 134041C: Reported as "Open"

**Offense:**

| | |
|---|---|
| Case Number: | C-03-CR-19-001220 |
| Description: | TRESPASS: PRIVATE PROPERTY |
| Statute Number: | CR.6.403 |
| Offense Date: | 2019-01-01 |
| File Date: | 2019-05-06 |
| Offense County: | Baltimore |
| Case Type: | Misdemeanor |
| Court Name: | Circuit |
| Notes: | Other Related Cases: 190010216 |
| Notes 2: | CJIS Code: 2-2220 |
| Status: | Open |

Case No. C-03-CR-19-001220: Reported as "Open"

**Offense:**

| | |
|---|---|
| Case Number: | 0000000GZ0KY1 |
| Description: | POSSESSING SUSPENDED LIC. |
| Offense Date: | 2018-03-08 |
| File Date: | 2018-03-08 |
| Offense County: | MONTGOMERY |
| Case Type: | TRAFFIC |
| Court Name: | DISTRICT |
| Arresting Agency: | MCP - 6TH DISTRICT |
| Notes 2: | CITATION NUMBER: 00H00KY1 |
| Status: | ACTIVE CASE |

Case No. 00000000GZ0KY1: Reported as an "Active Case"

**Offense:**

| | |
|---|---|
| Case Number: | 0000000H00KY1 |
| Description: | PERSON DRIVING MOTOR VEH. ON HWY.ON SUSPENDED LIC. AND PRIVILEGE |
| Offense Date: | 2018-03-08 |
| File Date: | 2018-03-08 |
| Offense County: | MONTGOMERY |
| Case Type: | TRAFFIC |
| Court Name: | DISTRICT |
| Arresting Agency: | MCP - 6TH DISTRICT |
| Notes 2: | CITATION NUMBER: 00H10KY1 |
| Status: | ACTIVE CASE |

Case No. 00000000H00KY1: Reported as an "Active Case"

**Offense:**

| | |
|---|---|
| Case Number: | 0000000H10KY1 |
| Description: | DRIVING MOTOR VEH. WHILE LIC. SUSPENDED UNDER 17-106, 26-204, 26-206, 27-103 |
| Offense Date: | 2018-03-08 |
| File Date: | 2018-03-08 |
| Offense County: | MONTGOMERY |
| Case Type: | TRAFFIC |
| Court Name: | DISTRICT |
| Arresting Agency: | MCP - 6TH DISTRICT |
| Notes 2: | CITATION NUMBER: 00GZ0KY1 |
| Status: | ACTIVE CASE |

Case No. 00000000H10KY: Reported as an "Active Case"

**Offense:**

| | |
|---|---|
| Case Number: | 0000000SR0QPN |
| Description: | ATTEMPT BY DRIVER TO ELUDE POLICE IN OFFICIAL POLICE VEH. BY FLEEING ON FOOT |
| Offense Date: | 2020-01-28 |
| File Date: | 2020-01-28 |
| Offense County: | MONTGOMERY |
| Case Type: | TRAFFIC |
| Court Name: | DISTRICT |
| Arresting Agency: | MCP - 6TH DISTRICT |
| Notes 2: | CITATION NUMBER: 00SN0QPN |
| Status: | ACTIVE CASE |

Case No. 00000000SR0QPN:  Reported as "Active Case"

**Offense:**

| | |
|---|---|
| Case Number: | 2C00471529 |
| Description: | TRESPASS: PRIVATE PROPERTY |
| Statute Number: | CR.6.403 |
| Offense Date: | 2019-01-01 |
| File Date: | 2019-01-01 |
| Offense County: | BALTIMORE |
| Case Type: | CRIMINAL |
| Court Name: | DISTRICT |
| Notes 2: | CJIS CODE: 2 2220 |
| Status: | ACTIVE |

Case No. 2C00471529: Reported as "Active"

**Offense:**

| | |
|---|---|
| Case Number: | 3D00406703 |
| Description: | OBSTRUCTING & HINDERING |
| Statute Number: | CL |
| Offense Date: | 2020-01-28 |
| File Date: | 2020-01-29 |
| Offense County: | MONTGOMERY |
| Case Type: | CRIMINAL |
| Court Name: | DISTRICT |
| Notes 2: | CJIS CODE: 1 0043 |
| Status: | ACTIVE |

Case No. 3D00406703:  Reported as "Active" even though it was terminated on 10/27/2020.

**Offense:**

| | |
|---|---|
| Case Number: | 5D00380434 |
| Description: | HANDGUN IN VEHICLE |
| Statute Number: | CR.4.203 |
| Offense Date: | 2018-03-08 |
| File Date: | 2018-03-09 |
| Offense County: | MONTGOMERY |
| Case Type: | CRIMINAL |
| Court Name: | DISTRICT |
| Notes 2: | CJIS CODE: 1 0175 |
| Status: | ACTIVE |

Case No. 5D00380434: Reported as "Active"

59.     Each of the Closed Cases should have been reported with a status that clearly indicated the underlying action was disposed.

60.     Within that employment report, Defendant also published duplicative criminal records, making it appear as though Plaintiff was the subject of more criminal charges than he had been.

a.   Defendant reported Case No. 3D00406703 in two separate sections of the report – in the County Criminal Search and  the National Criminal Database Search – making it appear as though Plaintiff was arrested two separate times and charged with five different crimes. In reality, Plaintiff was only arrested once and charged with three crimes.



Case No. 3D00406703, as reported in the County Criminal Records section of report

**Offense:**

| | |
|---|---|
| Case Number: | 3D00406703 |
| Description: | OBSTRUCTING & HINDERING |
| Statute Number: | CL |
| Offense Date: | 2020-01-28 |
| File Date: | 2020-01-29 |
| Offense County: | MONTGOMERY |
| Case Type: | CRIMINAL |
| Court Name: | DISTRICT |
| Notes 2: | CJIS CODE: 1 0043 |
| Status: | ACTIVE |

Case No. 3D00406703, as reported in the National Criminal Database Search section

b. Defendant reported Case Nos. 00000000GZ0KY1; 00000000H00KY1; and 00000000H10KY, which are all associated with the same arrest, in a way that made it appear as though Plaintiff was arrested three separate times and charged with different three crimes. In reality, Plaintiff was arrested one time and charged with a single crime.

**Offense:**

| | |
|---|---|
| Case Number: | 0000000GZ0KY1 |
| Description: | POSSESSING SUSPENDED LIC. |
| Offense Date: | 2018-03-08 |
| File Date: | 2018-03-08 |
| Offense County: | MONTGOMERY |
| Case Type: | TRAFFIC |
| Court Name: | DISTRICT |
| Arresting Agency: | MCP - 6TH DISTRICT |
| Notes 2: | CITATION NUMBER: 00H00KY1 |
| Status: | ACTIVE CASE |

Case No. 00000000GZ0KY1: Reported as independent offense

**Offense:**

| | |
|---|---|
| Case Number: | 0000000H00KY1 |
| Description: | PERSON DRIVING MOTOR VEH. ON HWY.ON SUSPENDED LIC. AND PRIVILEGE |
| Offense Date: | 2018-03-08 |
| File Date: | 2018-03-08 |
| Offense County: | MONTGOMERY |
| Case Type: | TRAFFIC |
| Court Name: | DISTRICT |
| Arresting Agency: | MCP - 6TH DISTRICT |
| Notes 2: | CITATION NUMBER: 00H10KY1 |
| Status: | ACTIVE CASE |

Case No. 00000000H00KY1: Reported as independent offense

**Offense:**

| | |
|---|---|
| Case Number: | 0000000H10KY1 |
| Description: | DRIVING MOTOR VEH. WHILE LIC. SUSPENDED UNDER 17-106, 26-204, 26-206, 27-103 |
| Offense Date: | 2018-03-08 |
| File Date: | 2018-03-08 |
| Offense County: | MONTGOMERY |
| Case Type: | TRAFFIC |
| Court Name: | DISTRICT |
| Arresting Agency: | MCP - 6TH DISTRICT |
| Notes 2: | CITATION NUMBER: 00GZ0KY1 |
| Status: | ACTIVE CASE |

Case No. 00000000H10KY: Reported as independent offense

c.  Defendant reported Case Nos. CR-03-CR-19-001220 and 2C00471529, both of which are

associated with the same arrest, in a way that made it appear as though Plaintiff was

arrested two separate times and charged with four different crimes. In reality, Plaintiff was arrested one time and charged with two crimes.

**Offense:**

| | |
|---|---|
| Case Number: | C-03-CR-19-001220 |
| Description: | TRESPASS: PRIVATE PROPERTY |
| Statute Number: | CR.6.403 |
| Offense Date: | 2019-01-01 |
| File Date: | 2019-05-06 |
| Offense County: | Baltimore |
| Case Type: | Misdemeanor |
| Court Name: | Circuit |
| Notes: | Other Related Cases: 190010216 |
| Notes 2: | CJIS Code: 2-2220 |
| Status: | Open |

Case No. C-03-CR-19-001220: Reported as independent offense

**Offense:**

| | |
|---|---|
| Case Number: | 2C00471529 |
| Description: | TRESPASS: PRIVATE PROPERTY |
| Statute Number: | CR.6.403 |
| Offense Date: | 2019-01-01 |
| File Date: | 2019-01-01 |
| Offense County: | BALTIMORE |
| Case Type: | CRIMINAL |
| Court Name: | DISTRICT |
| Notes 2: | CJIS CODE: 2 2220 |
| Status: | ACTIVE |

Case No. 2C00471529: Reported as independent offense

d.  Defendant reported Case Nos. 13041C and 5D00380434, both of which are associated with the same arrest, in a way that made it appear as though Plaintiff was arrested two separate times and charged for two different crimes. In reality, Plaintiff was only arrested one time and charged with a single crime.

**Offense:**

| | |
|---|---|
| Case Number: | 134041C |
| Description: | WEAR, CARRY AND TRANSPORT HANDGUN UPON THEIR PERSON |
| Statute Number: | CR 4-203(a)(1)(i) |
| File Date: | 2018-07-02 |
| Offense County: | Montgomery |
| Case Type: | INFORMATION |
| Court Name: | Circuit |
| Notes: | District Court Case Number: 5D00380434 |
| Status: | OPEN |

Case No. 134041C: Reported as independent offense

**Offense:**

| | |
|---|---|
| Case Number: | 5D00380434 |
| Description: | HANDGUN IN VEHICLE |
| Statute Number: | CR.4.203 |
| Offense Date: | 2018-03-08 |
| File Date: | 2018-03-09 |
| Offense County: | MONTGOMERY |
| Case Type: | CRIMINAL |
| Court Name: | DISTRICT |
| Notes 2: | CJIS CODE: 1 0175 |
| Status: | ACTIVE |

Case No. 5D00380434: Reported as independent offense

61.     Defendant published to Plaintiff's prospective employer adverse criminal record information that otherwise should have been excluded because it concerned an arrest record which antedated the report by more than seven years in violation of 15 U.S.C. § 1681c.

62.     Defendant inaccurately reported and the status of the Closed Cases.

63.     Defendant inaccurately reported several criminal cases more than one time in a single consumer report.

64.     The sole reason the adverse and obsolete criminal record information that otherwise should have been excluded was included in the employment purposed consumer report was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

65.     The sole reason the adverse and inaccurate criminal record information was included in the employment purposed consumer report was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer

66.     Had Defendant followed reasonable procedures, it would have discovered that it was reporting: (i) an obsolete record of arrest that antedated the report by more than seven years; (ii) expunged criminal records; (iii) duplicative criminal records; and (iv) inaccurate case statuses.

67.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer adverse, inaccurate, and stigmatizing criminal record information , Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

68.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer adverse, inaccurate, and stigmatizing criminal record information that otherwise should have been excluded, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681c.

**Challenger Denies Plaintiff's Employment Application**

69.     On November 29, 2023, Plaintiff was notified by Challenger that his employment application was denied as a direct result of the information reported by Defendant. Specifically,

Challenger informed Plaintiff that his employment application was denied because of the active/opened cases that Defendant reported about Plaintiff in the subject employment report.

70.     Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing and seeing the numerous expunged and active or opened cases inaccurately contained within the subject employment report.

71.     At this point, Plaintiff had not realized that Defendant was reporting the criminal charges, which did not result in conviction, and that antedated the subject employment report by over seven years, nor did Plaintiff realize that the Defendant inaccurately reported dispositions of the criminal records, as Plaintiff lacked the legal sophistication to discern these inaccuracies.

72.     Plaintiff contacted Challenger and informed them that the subject employment report published by Defendant was inaccurate as Plaintiff had no pending criminal cases at this time, and that Defendant was inaccurately reporting expunged criminal records.

73.     The Challenger representative with whom Plaintiff discussed these matters instructed Plaintiff to dispute these inaccurate contents with Defendant.

74.     Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting both in relation to the Challenger position, but also the impact of the same on his future prospects.

75.     Defendant published an inaccurate employment purposed consumer report about Plaintiff wherein it reported a non-conviction record – that antedated the report by more than seven years, expunged criminal records, duplicative criminal records, and inaccurate dispositions of cases and charges.

**Plaintiff's First Dispute to Defendant Regarding the Misinformation in Defendant's Employment Report**

76.     Desperate to secure employment with Challenger and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant.  Plaintiff disputed multiple times between December 29, 2023 and January 2, 2024, via telephone with Defendant.

77.     Plaintiff left numerous voicemails disputing the reporting of his expunged criminal records and the criminal records inaccurately labeled as "ACTIVE" and "OPEN.".

78.     Upon information and belief, each time Plaintiff left Defendant a voicemail, he identified himself and provided information to Defendant to support his dispute.

79.     Plaintiff specifically asked Defendant to investigate and remove the disputed contents from any employment report about Plaintiff.

**Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report After Plaintiff's First Dispute**

80.     Upon information and belief, Defendant received Plaintiff's voicemail disputes and updated Plaintiff's report on January 1, 2023.

81.     However, in the updated employment report, Defendant continued to report an expunged criminal record with Case No. C-03-CR-19-001220.

82.     Defendant further continued to report the following disposed cases as active/open:

    a.   Case No. C-03-CR-19-001220; and

    b.   Case No. 2C00471529.

83.     Defendant therefore failed to issue a corrected employment report to Challenger, as required by federal law.

84.   Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's first dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

85.   Because Defendant failed to issue a corrected employment report, Challenger did not reinstate Plaintiff's employment.

**Plaintiff's Second Dispute to Defendant Regarding the Misinformation in Defendant's Employment Report**

86.   Upon receiving the updated employment report on January 2, 2024, the Challenger representative emailed Defendant to acknowledge it received the revised version of Plaintiff's consumer report. The representative further indicated that the revised report still included opened or active cases that would render Plaintiff ineligible for employment with Challenger.

87.   Upon information and belief, after receiving a copy of the revised report, Plaintiff called Defendant on January 2, 2024, to re-dispute the cases still being reported as open or active on the revised report.

88.   Plaintiff again identified himself and provided information to Defendant to support his dispute.

89.   Plaintiff specifically disputed the active or open statuses reported with the Case Nos. C-03-CR-19-001220 and 2C00471529.

**Defendant Failed to Conduct a Reasonable Reinvestigation of Plaintiff's Second Dispute and Correct the Employment Report**

90.   That same day on (January 2, 2024) Defendant provided Challenger with a second revised report.

91.   This report accurately removed all instances of active/open cases, but continued to report the expunged criminal record (Case No. C-03-CR-19-001220).

92.     Defendant therefore again failed to issue a corrected employment report to Challenger.

93.     Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's second dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

94.     Upon Defendant removing all active/open cases from Plaintiff's subject employment report, Challenger reinstated Plaintiff's job offer.

95.     However, Plaintiff was morbidly embarrassed and felt judged by the representatives of his prospective employer.

96.     Not only did the report make it appear as though Plaintiff had more interactions with the police than he in fact had, it also included several records that his prospective employer should never have seen such as the expunged criminal records and those criminal charges which did not result in conviction and antedated the report by over seven years.

97.     But for Defendant's inaccurate employment report, Plaintiff's job application with Challenger would not have been originally denied, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting and continuously conferring back with his prospective employer regarding these inaccurate criminal records reported.

98.     Defendant's false report almost cost Plaintiff a promising, well-paying job with Challenger.

99.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law,

Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

100.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

101.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

102.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

103.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

104.    At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

105.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

106.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

107.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

108.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**

109.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

110.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day time limit for the completion of such an investigation.  *Id.*

111.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the

accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

112.    On at least two occasions 2023 and 2024, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct the inaccurate information in the employment report that is highly damaging to him.

113.    In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

114.    Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to correct the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

115.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

116.    Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering Defendant liable for actual or statutory damages, and punitive

damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively,

Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

117.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable

attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to

15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### 15 U.S.C. § 1681c(a)
### Failure to Exclude Adverse Non-Conviction Information that Antedated the Report by more than Seven Years

118.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the

preceding paragraphs as if fully stated herein.

119.    Within its consumer report about Plaintiff, Defendant failed to exclude at least one

adverse record which antedated the report by more than seven years.

120.    The record that Defendant published- a non-conviction record – which antedated

the report by more than seven years, is information that Congress deemed to be obsolete and for

that reason, should be excluded from consumer reports.

121.    Defendant knew or had reason to know that it was prohibited by the FCRA from

publishing the adverse information and should have excluded it because it was a non-conviction

record which antedated the report by more than seven years.

122.    Defendant violated 15 U.S.C. § 1681c(a)(5) by reporting an adverse and non-

conviction record that antedated the report by more than seven years.

123.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of

actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; damage to

his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life;

and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

124.    Defendant willfully violated 15 U.S.C. § 1681c(a) in that its conduct, actions, and inactions were willful, rendering Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

125.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


Dated: February 7, 2024.            */s/ Levi Y. Eidelman*
                                     Levi Y. Eidelman, MD #30903
                                     **CONSUMER ATTORNEYS**
                                     300 Cadman Plaza West, 12th Floor, Suite 12049
                                     Brooklyn, NY 11201
                                     T: (718) 360-0763
                                     E: leidelman@consumerattorneys.com

                                     *Attorneys for Plaintiff John Doe*