**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JOHN DOE,<br>*Plaintiff*,<br>v.<br>RELIANTCY, LLC,<br>*Defendant*. | Civil Action No.<br>24-0380-ABA |

**MEMORANDUM OPINION**

Plaintiff John Doe[1] alleges that Defendant Reliantcy, LLC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, when providing a pre-employment criminal history report to Plaintiff's prospective employer, Challenger Transportation, Inc. The parties have filed cross-motions for summary judgment. For the reasons that follow, the Court will deny Plaintiff's motion, grant Reliantcy's motion, and enter summary judgment in favor of Reliantcy.

## I. FACTUAL AND PROCEDURAL HISTORY[2]

On December 28, 2023, Plaintiff applied to work for Challenger as a driver and interviewed with Challenger. ECF No. 50-19 at 25:6–19; 80:11–13; ECF No. 54 at 2–6.[3] Challenger offered Plaintiff a position starting January 16, 2024, contingent on passing a drug test and background check. ECF No. 50-19 at 25:21–26:9; ECF No. 54 at 3 & 52–

---

[1] The Court previously granted Plaintiff's motion to proceed via pseudonym, at least at the pleadings stage. ECF No. 13 at 1.

[2] The facts are presented in the light most favorable to the non-movant. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

[3] All page citations other than to transcripts are to the ECF page numbers, which may differ from the parties' pagination.

53. Also on December 28, 2023, Challenger ordered a criminal background report on Plaintiff from Reliantcy, a consumer reporting agency. ECF No. 50-4. As part of its services, Reliantcy relies on sub-vendors for the criminal history information. ECF No. 50-21 at 25:3–22. On December 29, 2023, Reliantcy produced an initial background report on Plaintiff that listed several active or open criminal cases. ECF No. 54 at 13–24. On that same day, Gemma Gray, Challenger's HR Manager, emailed Plaintiff a copy of the initial report and explained that "[u]nfortunately, there are cases [listed in the background report] that currently disqualify [you] for the driver position with Challenger." ECF No. 50-12 at 3. Challenger also sent Plaintiff a letter stating that "[i]n reference to your background check results, we regret to inform you that we are unable to further consider you at this time. Our decision is based, in part, on information obtained through" Reliantcy. ECF No. 50-13 at 2. The letter explained that Plaintiff had "the right to contact [Reliantcy] to dispute any information contained in the report that [he] believe[d] may be inaccurate or incomplete." *Id.*

On December 29 and 30, 2023 and January 1, 2024, Plaintiff left voicemails for Reliantcy disputing the accuracy of the report and contending that he had no active criminal cases; he did not dispute that he had multiple prior criminal charges, but contended that each had been "expunged and/or dropped." *See* ECF No. 49-18 at 2 ("I actually lost my job due to you guys giving an inaccurate BG check and actually it's showing active cases on my BG which were expunged and/or dropped."); ECF No. 49-19. Amy Franchek, Reliantcy's director of client services, emailed Ms. Gray in the afternoon of January 1, 2026, informing Challenger of Plaintiff's disputes, and stating that Ms. Franchek would call Plaintiff on January 2 and that Reliantcy had ordered a more thorough and accurate Baltimore County-specific criminal background report on

Plaintiff that would be ready on January 2. ECF No. 50-15 at 4. Ms. Franchek also attached to that email an unfinished revised report that still listed active criminal cases because it did not include the county-specific report findings. *Id.* Prior to the completion and submission of the completed revised report that included the county-specific records, Ms. Gray reiterated early on January 2, 2026, to both Plaintiff and Reliantcy that the active cases on the earlier versions of the report would disqualify Plaintiff from working at Challenger. ECF No. 50-15 at 3 (email to Ms. Franchek: "The report shows some open/active cases which will disqualify him automatically."); ECF No. 50-12 at 2 (email to Plaintiff: "I have attached the revised background report. There are cases that are active. I will not be able forward to management for review until you have closed the cases.").[4] According to Lawrence Jay Mesmer, Reliantcy's managing partner, it is a standard industry practice among "employment screening" companies like Reliantcy to conduct criminal background checks by first running a "national" search and then, "if there are any reports found or flags found" on the national search, to "go to that particular state or county and do a deeper dive." ECF No. 50-21 at 6:21, 9:17, 35:4–24. Ms. Franchek also contacted Plaintiff and requested additional information regarding the allegedly expunged cases, some of which Plaintiff provided. ECF No. 50-11.

On January 2, 2026 around noon, Ms. Franchek provided Ms. Gray with Plaintiff's revised background report and the documents received from Plaintiff. ECF

[4] From these emails, it is unclear whether Ms. Gray initially understood that Ms. Franchek would be providing a revised report on January 2 that included the county-specific information. But Ms. Franchek dispelled any confusion a couple of hours later on January 2 when she responded to Ms. Gray's email, "I wanted to run the Baltimore County to make sure the cases were closed and they are so I have revised the report to mark the offenses 'closed'. Please see the attached revised report." ECF No. 50-15 at 3.

No. 50-15 at 3; ECF No. 50-18. The revised report showed all criminal cases as closed. ECF No. 50-18. Ms. Gray also provided the revised report to Plaintiff. ECF No. 50-15 at 2. Challenger then approved Plaintiff for employment and he started work on January 16, 2026, his original prospective start date. ECF No. 50-19 at 91:20–92:4. Plaintiff resigned from Challenger on March 10, 2024 due to a prior employment obligation but was told by Challenger that he could "return to Challenger Transportation after he completes his obligation with the other company." ECF No. 54 at 69.

On February 7, 2024, Plaintiff filed this lawsuit. ECF No. 1. In connection with the original background investigation and reinvestigation, and in addition to his complaint expressed to Reliantcy and Challenger that the initial background report listed closed expunged cases as active or open, Plaintiff alleges that Reliantcy violated the FCRA by listing in the reports any expunged cases regardless of status, listing some cases more than once, and listing a case that predated the report by more than seven years. Specifically with regard to the complaint about including expunged or closed cases and listing them as "active" or "open," he points to:

- charges from March 8, 2018 related to possessing and driving on a suspended license (case numbers 00000000GZ0KY1, 00000000H00KY1, & 00000000H10KY) that were closed with a disposition of nolle prosequi, ECF No. 1 ¶ 58; ECF No. 50-10; ECF No. 54 at 17–18, as well as for transporting a handgun (case numbers 134041C & 5D00380434) that had been closed and expunged, ECF No. 1 ¶¶ 53 & 58; ECF No. 50-6; ECF No. 54 at 15–16; 20–21;

- charges from January 1, 2019 of second-degree assault and trespass (case numbers CR-03-CR-19-001220 & 2C00471529) that had been closed and expunged, ECF No. 1 ¶¶ 53 & 58; ECF No. 50-7; ECF No. 54 at 16, 19; and
- Charges from January 28, 2020 for fleeing, obstruction, and resisting arrest (case numbers 00000000SR0QPN & 3D00406703) that were closed with a disposition of nolle prosequi, ECF No. 1 ¶ 58, ECF No. 50-8; ECF No. 54 at 18 & 20.

*See* ECF No. 49 at 10–13 (Plaintiff's brief, listing the alleged errors).

His complaint about including a case older than seven years referred to case number 1D00334636, for resisting/interfering with arrest, disorderly conduct, and second-degree assault, with an offense date of April 5, 2015, which was shown on the initial background report as having resulted in a disposition of nolle prosequi and was marked closed. ECF No. 1 ¶ 54, ECF No. 54 at 18–19.

Although Plaintiff points to various alleged errors, the undisputed evidence in the record establishes that the only reason Challenger initially rescinded the job offer was because the background report showed active or open criminal cases. ECF No. 50-12 at 2 ("There are cases that are active. I will not be able forward to management for review until you have closed the cases."); ECF No. 50-15 at 3 ("The report shows some open/active cases which will disqualify him automatically.").

Plaintiff alleges in Count One of the complaint that Reliantcy violated the FCRA by failing to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" in connection with the initial report. 15 U.S.C. § 1681e(b); *see* ECF No. 1 ¶¶ 101–08. In Count Two he alleges Reliantcy failed to "conduct a reasonable reinvestigation to determine whether

the disputed information is inaccurate" regarding the revised report. 15 U.S.C. § 1681i(a)(1)(A); *see* ECF No. 1 ¶¶ 109–117. And in Count Three he alleges Reliantcy erroneously included in the background report "adverse item[s] of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(6); *see* ECF No. 1 ¶¶ 188–125. Plaintiff alleges that as a result of these alleged FCRA violations by Reliantcy between December 29, 2023 and January 2, 2024, he suffered reputational damage, emotional distress causing loss of sleep, and has lost "no less than 6 hours trying to have the inaccuracies corrected." *See* ECF No. 50-19 at 85:1–90:6; ECF No. 49-27 at 3. Plaintiff has not provided evidence of any economic damages.

On May 9, 2024, Judge Gallagher denied Reliantcy's motion to dismiss, finding adequate allegations (taken as true at that time) of injury-in-fact for Article III standing and adequate allegations that the reports contained inaccurate and unreportable information. ECF No. 13; *see id.* at 1 ("This Court is persuaded that Plaintiff has adequately alleged a concrete and particularized (albeit seemingly quite minimal) injury-in-fact occurring during the five-day window (over a holiday weekend) where his existing job offer was temporarily revoked."). After discovery concluded, Plaintiff filed his motion for partial summary judgment, ECF No. 49, and Reliantcy filed a cross-motion for summary judgment, ECF No. 53, which are both now ripe.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense—or the part of [any] claim or defense"—by showing that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof

of its existence "might affect the outcome of the suit," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As stated, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Sedar*, 988 F.3d at 761 (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a moving party carries this burden, then the Court will award summary judgment unless the non-moving party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [opposing party's] position," however, is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

Because the parties filed cross-motions for summary judgment, the Court will consider each motion separately and will consider the relevant facts in the light most favorable to each non-moving party. *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985) ("When presented with cross-motions for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard.'") (quoting 10a Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2720).

## III. DISCUSSION

### A. Reliantcy's Motion for Summary Judgment

Reliantcy argues that it is entitled to summary judgment because Plaintiff has failed to establish evidence from which a reasonable factfinder could conclude that he suffered any actual damages arising from Reliantcy's alleged FCRA violations over the few days at issue. The Court agrees.

There are separate damages provisions under the FCRA for conduct that is negligent and conduct that is willful. For negligent conduct, a plaintiff is only entitled to actual damages and, if such damages exist, attorneys' fees. 15 U.S.C. § 1681*o*; *see Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) (holding that FCRA plaintiffs may not "obtain attorneys' fees without being awarded some other form of damages"). "Actual damages may include economic damages, as well as damages for humiliation and mental distress." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239–40 (4th Cir. 2009). For willful conduct, a plaintiff is entitled to actual *or* statutory damages, punitive damages, and attorneys' fees. 15 U.S.C. § 1681n; *see Robinson*, 560 F.3d at 239–40 ("The FCRA creates a private right of action allowing injured consumers to recover 'any actual damages' caused by negligent violations and both actual and punitive damages for willful noncompliance."). Willfulness includes reckless conduct. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007). And recklessness involves "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

"It is not enough, however, to show that a defendant violated [the FCRA] to survive summary judgment. A failure to establish damages would still warrant summary judgment in favor of a defendant." *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574,

581 (D. Md.), *aff'd*, 623 F. App'x 94 (4th Cir. 2015). And "absent a willful violation, no nominal damages should be awarded without a separate showing of actual damages." *Id.* (citing *Wright v. TRW, Inc.*, 872 F.2d 420 (4th Cir. 1989)); *see also Nagle*, 297 F.3d at 1307 ("[F]ailure to produce evidence of damage resulting from a FCRA violation mandates summary judgment."); *King v. Equifax Info. Servs., LLC*, Case No. 22-cv-07484-WHA, 2023 WL 3006552, at *4 (N.D. Cal. Apr. 18, 2023) ("To establish a failure to properly reinvestigate under Section 1681i, Plaintiff must establish that . . . Plaintiff suffered damages as a result of Defendant's conduct.") (quoting *Huffman v. Experian Info. Sols., Inc.*, Case No. 19-cv07408-JSW, 2021 WL 1561304, at *6 (N.D. Cal. Apr. 14, 2021)).

Here, as explained below, viewing the facts in the light most favorable to Plaintiff, there is no evidence that any FCRA violations by Reliantcy were "willful," and therefore Plaintiff may only pursue "actual damages" under a negligence theory. But there is also no evidence of any actual damages from Reliantcy's conduct, which "mandates summary judgment" in favor of Reliantcy. *Nagle*, 297 F.3d at 1307; *see also Davenport*, 124 F. Supp. 3d at 581 ("'Actual damages' do not include nominal damages under the FCRA").

### 1. Lack of Willfulness

"Even though summary judgment is 'seldom appropriate' on whether a party possessed a particular state of mind," where evidence that a defendant "acted willfully is wholly lacking" and "no reasonable jury could conclude that [the defendant] acted willfully," summary judgment is appropriate on claims of willful FCRA violations. *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). In *Dalton*, there was no evidence that the consumer reporting agency acted willfully in connection with a criminal history report provided to a prospective employer. Specifically, the

agency was not "aware that its subvendors relied upon" incorrect information, the agency had found the sub-vendors "to be reliable" in the past, there was "no evidence that other consumers ha[d] lodged complaints similar to Dalton's against" the agency, and the agency "corrected its mistake one day after Dalton challenged the accuracy of the report." *Id.*

Here too, there is no evidence of willfulness, at least as to Reliantcy's conduct other than the inclusion on the reports of the April 2015 charge for resisting arrest, which was more than seven years old. The uncontroverted evidence in this case is that Reliantcy followed industry standards regarding first ordering a national report—which Reliantcy described as generally less accurate "at the county level" than county-specific reports but as "more accurate at a national level of picking up anything"—followed by a more accurate county-specific report. *See* ECF No. 50-21 at 31:17–32:7; *see also id.* at 35:4–15. In addition and from the evidence presented, no reasonable jury could conclude that Reliantcy was reckless in relying on its sub-vendors that it had found reliable in the past. There is also no evidence that Reliantcy had notice of an established history of similar complaints, and it promptly corrected the one issue that was preventing Plaintiff from being hired: the closed cases listed on his background report as active.[5] The evidence, even when viewed in the light most favorable to Plaintiff, does not support that Reliantcy engaged in "an unjustifiably high risk of harm that is either

---

[5] While not specifically raised by Plaintiff as a reason why Reliantcy was willful or reckless, it does appear that his counsel filed a very similar case, also based on events from December 2023, against Reliantcy after this case was filed. *Solomon v. Reliantcy, Inc.*, 24-cv-2753-LKG. This one additional case, filed by the same counsel and alleging events occurring weeks before the events in this case, does not create an established and known history of prior similar complaints that might create a genuine dispute of material fact over Reliantcy's alleged willfulness.

known or so obvious that it should be known." *Safeco Ins.*, 551 U.S. at 68 (quoting *Farmer*, 511 U.S. at 836).

There could be a genuine issue of fact regarding whether Reliantcy willfully included a criminal case in the reports that was more than seven years old, understanding that it violated the FCRA. *See* ECF No. 50-1 at 9 (Reliantcy's training manual explaining that "you *cannot* report . . . negative information (except criminal convictions) after seven years"); ECF No. 50-3 at 2 (Ms. Franchek discussing with Ms. Gray in an April 2023 email *regarding an individual who is not Plaintiff* that "I wanted you to be aware of the offense that was found on [the individual's] National Search (dated in 2006). Obviously, this is past the 7y history but just wanted to let you know about the offense for your review and knowledge"). But, as discussed below, that factual dispute is not material because under the particular facts of this case, the inclusion of the older case in the reports is not a violation of the FCRA.

Without evidence of willful violations of the FCRA, Plaintiff's claim for damages must be analyzed under 15 U.S.C. § 1681*o*, based on alleged negligence, and therefore he must proffer evidence of actual damages to survive summary judgment.

**2. Lack of Actual Damages**

As explained above, the specific conduct by Reliantcy that Plaintiff alleges violated the FCRA was that Reliantcy included on the reports "(1) expunged criminal records; (2) a non-conviction record that antedated the report by more than seven years; (3) duplicate records; and, in the case of the initial report . . . (4) cases with a status of 'OPEN' or 'ACTIVE' when they were closed." ECF No. 49 at 1–2. And Plaintiff contends that as a result, he suffered damages in the form of "loss of sleep," "mental and emotional pain, anguish, humiliation and embarrassment," "damage to his reputation,"

and the loss of "at least six hours trying to have Defendant correct the inaccuracies in his reports." *Id.* at 17–18.

As stated, actual damages can include emotional distress, but while "a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, [the Fourth Circuit has] required a plaintiff to reasonably and sufficiently explain the circumstances of the injury and not resort to mere conclusory statements." *Robinson*, 560 F.3d at 241 (quoting *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007)). "Thus, [the Fourth Circuit has] distinguished between plaintiff testimony that amounts only to conclusory statements and plaintiff testimony that sufficiently articulates true demonstrable emotional distress." *Id.* Similarly, "[a]n award of compensatory emotional distress damages requires evidence establishing that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated," and a "plaintiff's own conclusory allegations that he felt 'embarrassed,' 'degraded,' or 'devastated,' and suffered a loss of self-esteem, will not suffice to create a disputed issue of material fact for the jury regarding the presence of compensable emotional distress." *Doe v. Chao*, 306 F.3d 170, 180 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004) (evaluating the "actual damages" requirement of the Stored Communications Act); *see also id.* at 181 n.6 ("[A] showing of very minor emotional distress, . . . which, one supposes, would have to include *any* amount of momentary annoyance, angst, or irritation that might support a nominal damages award, cannot possibly suffice to establish 'actual damages' under the [Stored Communications] Act. The consequent possibility that some plaintiffs who suffer very minor harms will go uncompensated, . . . is the price of the actual damages provision's gatekeeping function of avoiding tremendous overcompensation of plaintiffs whose damages evidence fails to establish

any meaningful injury at all.") (internal citations and some quotation marks omitted); *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 642, 654 (E.D. Va. 2010) ("There is no reason in principle or in statutory language that the definition of 'actual damages' under the FCRA should be different from that under the SCA") (citing *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 205 (4th Cir. 2009)).

Here, Plaintiff has presented evidence, in the form of his testimony only, that he has suffered a loss of sleep, embarrassment and loss of reputation, and that his communications with Reliantcy took about six hours, time he could have spent doing other things. *See* ECF No. 50-19 at 85:1–90:6; ECF No. 49-27 at 3. When asked to quantify his loss of sleep, Plaintiff testified at his deposition that

> [u]p until I was able to actually talk to, I don't know if it was Gemma or the other lady, I don't know her name, and I was – I actually got a -- a start date of I guess the 16th as you say, and that's because I – I'm still thinking like, what -- what am I supposed to do? I got -- I have kids. I -- I got to work; I got to pay bills, E-T-C.

ECF No. 50-19 at 88:11–89:8. When asked about emotional injury, Plaintiff testified

> I mean, I'm -- just basically word. I can't really -- I'm not a – I'm not really a therapist, but I -- like I said, I just know how I felt and my emotions were just all over the place. I didn't -- like I said, I was wondering what I'm going to do, how I'm going to be able to do this, do that, especially over something that -- that wasn't my fault, I was trying to get corrected.

*Id.* at 89:9–90:6. As to reputational damage, Plaintiff testified that

> [t]hose convictions shown in my record that it doesn't that I'm like a—a certain type of individual, but I was definitely looked at different and spoke to a little bit different once I went back in. It – I could just feel the difference in the way [HR and mangers] were looking at me or talking to me or not talking to me as much.

*Id.* at 86:1–11, 12–17.

In *Robinson*, the Fourth Circuit "warned that not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims." 560 F.3d at 241 (quoting *Sloane*, 510 F.3d at 503). Nonetheless, in that case, the court held that Robinson had "sufficiently articulated and demonstrated the emotional distress she experienced as she attempted to correct Equifax's errors" by presenting evidence of "headaches, sleeplessness, skin acne, upset stomach, and hair loss" as well as "testimony of Robinson's friends and family members [that] painted a detailed picture of her ongoing struggles with Equifax and the emotional toll these events took upon her." *Id.* "[O]ne of Robinson's co-workers testified that in response to her continued problems with Equifax, Robinson 'would be crying' and 'screaming' and often she was 'upset . . . [and] stressed.'" *Id.* Another "recounted that Robinson . . . was often 'visibly upset' as a result of the company's conduct." *Id.* And Robinson's mother testified that Robinson "was '[d]istraught' and there 'were changes in her physical appearance'" and "'changes in her demeanor, her interactions with her daughter and her family, [and] friends.'" *Id.*

In *Chao*, the Fourth Circuit concluded that "evidence that emotional distress caused chest pains and heart palpitations, leading to medical and psychological treatment which included a formal diagnosis of 'major depressive disorder,' as well as necessitated prescription medication," would be sufficient to warrant "some amount of compensatory damages" under an "actual damages" standard, but that "'vague and conclusory' testimony that a claimant was 'highly upset,' could not 'accept it mentally,' 'didn't feel like the same person,' or 'spent more time on the couch'" would be

insufficient. 306 F.3d at 180 (citing *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001) and quoting *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 719 (5th Cir. 1998)); *see id.* ("In determining whether sufficient evidence exists to support an award of more than nominal damages [and thus enough for 'actual damages'] for emotional distress, we examine factors such as the need for medical, psychological, or psychiatric treatment, the presence of physical symptoms, loss of income, and impact on the plaintiff's conduct and lifestyle.").

Plaintiff's proffered evidence of reputational and emotional damage is vague and conclusory and insufficient to create a genuine dispute of material fact regarding the existence of actual damages. He does not quantify how much sleep he lost, describe any physical symptoms, or present any evidence that corroborates his testimony, and he received no counseling or therapy. ECF No. 50-19 at 90:3–6. Instead, he merely testified that he thought people looked at him differently and that his emotions were "all over the place." ECF No. 50-19 at 86:1–17, 89:20. And the six hours he claims to have spent trying to rectify the perceived mistakes at a time when he was not otherwise employed (and does not allege any financial loss therefrom) does not lift his damages above nominal. *See* ECF No. 54 at 4 (showing Plaintiff's last employment as ending in February 2023); *see also Williams v. Aberdeen Proving Ground Fed. Credit Union*, Case No. 25-cv-2726-JRR, 2026 WL 1998375, at *9 (D. Md. July 10, 2026) (in the context of standing to bring an FCRA claim, holding that "a bare allegation of lost time is insufficient to support a showing of concrete harm"); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995) (holding that a plaintiff's "expenses incurred merely to notify [a credit reporting agency] of inaccurate credit information . . . cannot be compensable as 'actual damages' for a violation of the FCRA"); *Slyzko v. Equifax*

*Info. Servs. LLC*, No. Case No. 19-cv-00176-JAD-EJY, 2020 WL 1433518, at *10 (D. Nev. Mar. 23, 2020) (dismissing an allegation that "lost-time" amounted to actual damages under the FCRA where there was no associated claim of "lost wages").

* * *

Because there is no evidence of willful FCRA violations on the part of Reliantcy or actual damages caused by listing closed cases as active on Plaintiff's initial background report (which was corrected within a few days), Reliantcy is entitled to summary judgment on at least Counts One and Two.

### 3. 15 U.S.C. § 1681c

For the foregoing reasons, the Court need not decide whether the evidence would support Plaintiff on the other elements of Counts One and Two regarding alleged violations of sections 1681e and 1681i. As to Count Three, Reliantcy's inclusion of the criminal charge that was more than seven years old, even if willful, it was not a violation of the FCRA.

Section 1681c provides that a consumer report may not contain "adverse item[s] of information, other than records of convictions of crimes which antedate[] the report by more than seven years," unless the prospective salary for the job at issue is at least $75,000. 15 U.S.C. § 1681c(a)(5) & (b)(3). There is no genuine dispute that Plaintiff's salary at Challenger was less than $75,000. *See* ECF No. 54 at 53 (providing that after the training period, Plaintiff would earn $22 an hour, which based on a 40-hour work week over 52 weeks would be $45,760). Plaintiff contends that, as a result, Reliantcy violated the FCRA by including in his report that he had been charged in April 2015 with resisting arrest.

But at the time of the background check (late 2023 into early 2024), Maryland had its own statute that had been on the books since 1992 that mirrored § 1681(a)(5) except that it did not apply to jobs where the prospective salary was $20,000 or more, *i.e.* it *permitted* reports to include arrests and charges that did not result in conviction and that were older than seven years so long as the job the person was applying for had an anticipated salary of $20,000 or more. *See* CONSUMER LAW—CREDIT REPORTING AGENCIES—REGULATIONS, 1992 Maryland Laws Ch. 441 (S.B. 20) (amending Md. Code, Com. Law § 14-1203).[6] Plaintiff does not dispute that his anticipated salary was more than $20,000. The question then becomes, does the federal or state statutory salary limit apply in this case? If the federal limitation applies, Reliantcy violated the FCRA and conceivably did so willfully. But for the following reasons, if the state limitation applies (which it does), Reliantcy did not violate the FCRA.

Section 1681t provides that "[e]xcept as provided in subsections (b) and (c), this subchapter does not . . . exempt any person . . . from complying with [related state laws] except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C. § 1681t(a). In other words, the FCRA preempts some state laws, but only if (1) a given law is preempted under one of the specific preemption rules in subsections (b) or (c), or (2) it does not fall under one of those subsections but it is "inconsistent" with the FCRA. Plaintiff contends that the version of Md. Code, Com. Law § 14-1203 in place during the

[6] After the relevant period, Maryland amended § 14-1203 to fully mirror § 1681c of the FCRA. But that amendment did not come into effect until October 1, 2024. Md. Code, Com. Law § 14-1203(b)(3).

relevant period, which provided that the prohibition on reporting adverse information more than seven years old did not apply to positions making more than $20,000, is inconsistent with section 1681c, which provides the same except for positions making more than $75,000, and therefore does not control.

But section 1681t(a) expressly applies "[e]xcept as provided in subsections (b) and (c) . . . ." Section 1681t(b)(1)(E) contains a savings clause for some preexisting state laws. It provides that "[n]o requirement or prohibition may be imposed under the laws of any State" "with respect to any subject matter regulated under" section 1681c "except that this subparagraph shall not apply to any State law in effect on September 30, 1996." In other words, irrespective of section 1681t(a), a state law containing a requirement or prohibition regarding subject matter regulated by section 1681c is expressly preempted *unless* that state law was in effect on September 30, 1996. A state law that *was* in effect on that date—as Md. Code, Com. Law § 14-1203 was—is expressly *not* preempted. *See Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1, 8–9 (1st Cir. 2022) (discussing that section 1681t(b)(1)(E) exempts from preemption state laws in effect on September 30, 1996 and holding that "[b]ecause the provision preempts states from enacting laws with respect to subject matters regulated under that Section, the clause serves to preserve pre-existing state laws even if they relate to regulated subject matters otherwise preempted by the FCRA"); *Kemp v. Superior Ct.*, 302 Cal. Rptr. 3d 788, 799–800 (Cal. App. 2022) ("[T]here is a two-prong test under section 1681t(b)(1)(E) . . . for the express preemption of a state law: the 'FCRA preempts state consumer reporting statutes when (1) the subject matter of the state statute concerns matters regulated under 15 U.S.C. § 1681c . . . and (2) the state law took effect after September 30, 1996'") (quoting *Simon v. Directv, Inc.*, Case No. 09-cv-00852-PAB-KLM, 2010 WL 1452853, at *3 (D. Colo. Mar.

19, 2010), *report and recommendation adopted*, 2010 WL 1452854 (D. Colo. Apr. 12, 2010)).

Here, section 1681t(b)(1)(E) is directly on point and therefore section 1681t(a) does not apply: the Maryland statute has a requirement related to subject matter regulated under section 1681c, and thus the state law would be preempted, *except that* the statute was in effect on and before September 30, 1996. As a result, section 1681c does not preempt Maryland's 1992 version of Md. Code, Com. Law § 14-1203, which was in effect during the relevant period, and the Maryland statute controls in this case. Because Plaintiff's position paid more than $20,000, it was not a violation of either statute for Reliantcy to include a criminal charge on Plaintiff's background reports that predated the report by more than seven years.

**B. Plaintiff's Motion for Partial Summary Judgment**

In his motion, Plaintiff asks for a declaratory judgment that (1) Reliantcy reported inaccurate information in Plaintiff's background reports; (2) Reliantcy's inaccurate reporting was consistent with its usual policies and procedures; (3) Reliantcy failed to conduct a reasonable reinvestigation into Plaintiff's dispute; (4) the inaccuracies within the report would have been discovered had Reliantcy conducted a reasonable reinvestigation; (5) Reliantcy reported a non-conviction record that antedated the report by more than seven years; (6) Plaintiff sustained damages; and (7) Plaintiff's damages were caused by Reliantcy. *See, e.g.*, ECF No. 49-1 at 8.

In light of this Court's holding that there is no evidence of willful violations of the FCRA by Reliantcy (and thus Plaintiff could only proceed under a negligence theory) and no evidence of the actual damages necessary to maintain a negligence-based FCRA claim, judgment in Plaintiff's favor on issues 5, 6, and 7 will be denied. Plaintiff's motion

regarding the remaining issues will be denied as moot given that Reliantcy has established that it is entitled to summary judgment.

## IV. CONCLUSION

Reliantcy is entitled to summary judgment on Plaintiff's claims primarily because there is no evidence that Reliantcy willfully violated the FCRA, or evidence of "actual damages" as required to prove negligence-based FCRA violations. Therefore, Reliantcy's motion will be granted, Plaintiff's motion will be denied, and the case will be closed.

A separate order will issue.

Date: November 10, 2026

/s/
Adam B. Abelson
United States District Judge